# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

**YOLANDA BROWN**                                                       **PLAINTIFF**

**V.**                                               **CASE NO. 3:20-cv-00075-KHJ-JCG**

**ANDREW SAUL,** *Commissioner of*                         **DEFENDANT**
*Social Security*

## REPORT AND RECOMMENDATION

Plaintiff Yolanda Brown seeks judicial review of the decision of the Commissioner of the Social Security Administration, denying her application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. § 423(d)(1)(A), and Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. § 1382c(a)(3). Plaintiff has filed a Motion for Summary Judgment [13], and the Commissioner has filed a Motion to Affirm the Commissioner's Decision [16]. Having considered the submissions of the parties [13] [14] [15] [16] [17] [18], the record, and relevant law, the undersigned concludes the Commissioner's decision should be affirmed.

## BACKGROUND

### I. Procedural History

Plaintiff alleged disability beginning on May 1, 2017, when she was 38 years old, asserting an inability to engage in substantial gainful activity because of diabetes, breathing problems, limited use of bilateral upper extremities (right and left hands), major depressive disorder, and intellectual disability. [12] at 37-38. Plaintiff's claims

for DIB and SSI were denied. Plaintiff requested a hearing before an administrative law judge (ALJ). The ALJ heard Plaintiff's case, which included testimony from Plaintiff and a vocational expert. *Id.* at 33-53. The ALJ issued a written decision on March 11, 2019, denying Plaintiff's claim. *Id.* at 14-26. The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. Plaintiff filed this action for review under 42 U.S.C. § 405(g).

II.   Five-factor Sequential Process

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity since the alleged onset date of May 1, 2017. *Id.* at 16. At step two, the ALJ found Plaintiff suffered from the following severe impairments: "depression, diabetes mellitus, osteoarthritis, and carpal tunnel syndrome." *Id.* The ALJ determined Plaintiff's "allegations of hypertension and hyperlipidemia are not severe." *Id.* The ALJ found "no medical signs or laboratory findings to establish a medically determinable impairment of neck pain." *Id.* at 17. The ALJ found "no evidence to establish the existence of medically determinable impairments of bipolar disorder or schizoaffective disorder." *Id.*

At step three, the ALJ found Plaintiff did not meet the standard of a listed impairment. *Id.* at 17-19. Before step four, the ALJ found Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b)

> except she can only occasionally climb ramps, stairs, ropes, ladders, or scaffolds. She can frequently balance, stoop, and crouch. She can occasionally crouch, kneel, and crawl. She can frequently, but not constantly, use her hands bilaterally for fine and gross manipulation.

> She is limited to occasional interaction with supervisors, co-workers, and the public. She is also limited to simple routine type tasks.

*Id.* at 19.

At step four, with the use of vocational expert testimony, the ALJ concluded` Plaintiff could not perform her past relevant work as a poultry boner and poultry dressing worker. *Id.* at 24-25. The ALJ, with the use of vocational expert testimony, found Plaintiff capable of performing the following light, unskilled representative occupations: routing clerk, housekeeper, and order caller. *Id.* at 26. At step five, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act from the alleged onset date of May 1, 2017, through March 11, 2019, the date of the ALJ's decision. *Id.* at 35.

## ANALYSIS

I. <u>Standard of Review</u>

The Court's review of the Commissioner's final decision that Plaintiff was not disabled is limited to two inquiries: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the decision comports with relevant legal standards. See 42 U.S.C. § 405(g); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). The Supreme Court recently explained:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of "substantial" in other contexts, *the threshold for such evidentiary sufficiency is not high*. Substantial evidence ... is more than a mere scintilla. It means - and means only - such relevant

3

evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (emphasis added) (citations and internal quotations and brackets omitted).

Under the substantial evidence standard, "[t]he agency's findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020) (citations and internal quotations omitted). In applying the substantial evidence standard, the Court "may not re-weigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *See Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The ALJ has the sole responsibility for determining a claimant's disability status at the hearing level. *See Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990); 20 C.F.R. § 416.946(c).

II.   Analysis

**A. The inaudible portion of the transcript**

Under 42 U.S.C. § 405(g), the Commissioner "shall file a certified copy of the transcript of record including the evidence upon which the findings and decision complained of are based." *Id.* Here, the court reporter at the ALJ hearing began experiencing problems with the recording while the vocational expert was testifying. [12] at 52-53. Most of the vocational expert's testimony was not recorded and is not

transcribed. In her first assignment of error, Plaintiff alleges her case should be remanded because without a transcript of the vocational expert's testimony, there is not substantial evidence in support of the ALJ's step 5 conclusion. [18] at 4. Plaintiff also characterizes her claim as a denial of due process, alleging the transcript is incomplete in a critical way that denies Plaintiff the right to meaningful review of the ALJ's decision. *Id.* at 4.

In response, Defendant argues, "Plaintiff's counsel was present at th[e] hearing, and, like the ALJ, heard the vocational expert's testimony. Plaintiff does not argue that the ALJ's step five finding was wrong, or that the ALJ incorrectly interpreted the vocational expert's testimony; only that the hearing transcript does not include the vocational expert's testimony." [17] at 7 (internal citations omitted).

An incomplete record may involve the record before the district court on judicial review, *see Brady v. Apfel,* 41 F. Supp. 2d 659, 668 (E.D. Tex. 1999), or the record before the ALJ, *see Torres v. Shalala,* 48 F.3d 887, 894 (5th Cir. 1995). In either instance, a partially incomplete record is not a per se due process violation or legal error that automatically requires a remand. *See, e.g., Ka Fung Chan v. INS,* 634 F.2d 248, 258 (5th Cir. 1981); *Brady,* 41 F. Supp. 2d at 659, 668. "Instead, the touchstone is whether the administrative record that does exist permits meaningful judicial review." *Brady*, 41 F. Supp. 2d at 668 (citations omitted); *see Bates v. Astrue*, No. 2:05-CV-0269, 2008 WL 4367287, at *2 (N.D. Tex. Sept. 24, 2008) (finding "[t]he critical consideration is whether the deficiencies prohibit meaningful judicial review"), aff'd, 327 F. App'x 516 (5th Cir. 2009). "[P]roof of a denial of due process in an

administrative proceeding requires a showing of substantial prejudice." *Ka Fung Chan*, 634 F.2d at 258.

The ALJ heard the vocational expert's testimony during the administrative hearing and set out in the written decision the critical part of the vocational expert's testimony. The ALJ's decision provides:

> To determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as a Routing Clerk (DOT 222.687-022), an unskilled job performed at the light level of exertional (with 41,326 such positions in the national economy); a Housekeeper (DOT 323.687-014), an unskilled job performed at the light level of exertion (with 129,932 such positions in the national economy); and an Order Caller (DOT #209.667-014), an unskilled job performed at the light level of exertion (with 114,232 such positions in the national economy).

[12] at 26.

Plaintiff has not alleged that the ALJ's summary of the vocational expert's testimony was flawed. There is no indication in Plaintiff's briefing that having the transcript of the vocational expert's testimony would aid Plaintiff's arguments. Plaintiff's first assignment of error is ultimately an allegation that reversal and remand is required because the vocational expert's testimony was not transcribed. The ALJ's summary of the vocational expert's testimony functions to facilitate meaningful judicial review, and remand is not appropriate because Plaintiff has not demonstrated prejudice from the untranscribed testimony. *See Williams v. Barnhart*, 289 F.3d 556, 557 (8th Cir. 2002) ("Absent an indication that the missing portion of

6

the transcript would bolster appellant's arguments or prevent judicial review, this Court will not remand a case based upon inaudible portions of the record."); *Andres v. Bowen*, 870 F.2d 453, 455-56 (8th Cir. 1989) (finding ALJ's written decision "in effect reconstituted the missing portion of the hearing transcript" and there was no indication that the missing portion would aid the plaintiff or prevent fair judicial review); *McGlone v. Heckler*, 791 F.2d 1119, 1120 (4th Cir.1986) (finding "[t]he plaintiff shoulders the burden of showing that some material evidence was not reported or was so incompletely reported that its effect is obscured."); *Cruz v. Colvin*, No. CV M-14-780, 2016 WL 749674, at *9 (S.D. Tex. Jan. 21, 2016), report and recommendation adopted, No. 7:14-CV-780, 2016 WL 728182 (S.D. Tex. Feb. 24, 2016) (finding ALJ's summary of testimony "help[ed] to offset any harm or prejudice and also function[ed] to facilitate meaningful judicial review" where plaintiff failed to demonstrate associated prejudice); *Wilkins v. Colvin*, No. A-14-CV-00160-SS-ML, 2015 WL 3936141, at *10 (W.D. Tex. June 26, 2015) (finding "the ALJ's summary of this testimony, coupled with the documentary record in the case and the transcript . . . collectively provide a basis for meaningful review of the merits of the ALJ's decision); *Bates*, 2008 WL 4367287, at *2 (finding "Plaintiff has not shown the recitation and summarization of his testimony by the ALJ was flawed, nor has plaintiff identified any prejudice from the untranscribed testimony."); *Vanatta v. Barnhart*, 327 F. Supp. 2d 1317, 1323 (D. Kan. 2004) (concluding "plaintiff did not prove that the hearing testimony was not as the ALJ characterized it in his opinion, nor did he prove that he was prejudiced by the deficiencies in the transcript").

**B. The contradiction in the ALJ's RFC amounts to a scrivener's error**

The ALJ's residual functional capacity for Plaintiff limits Plaintiff to both frequent crouching and occasional crouching, providing "She can frequently balance, stoop, and crouch. She can occasionally crouch, kneel, and crawl." [12] at 19. Plaintiff argues that this contradiction requires the Court to speculate about the limits the ALJ placed on Plaintiff, and consequently, step 5 is not supported by substantial evidence. [14] at 12. Defendant counters that the ALJ's limitation to both frequent and occasional crouching is a harmless typographical error of no consequence because none of the three jobs identified by the vocational expert require more than occasional crouching. [15] at 7-8. Two of the jobs, routing clerk (222.687-022) and order clerk (209.667-014), require no crouching. *Id.* at 7. The third job, housekeeper (323.687-014), requires occasional crouching. *Id.*

"In the context of social security cases, errors in ALJ decisions have been excused as mere scrivener's errors when the ALJ's intent was apparent." *Dukes v. Colvin*, No. 3:14–CV–173–BF, 2015 WL 1442988, at *4 (N.D. Tex. Mar. 31, 2015); *see Wills v. Colvin*, No. 1:14-CV-504, 2016 WL 792693, at *6 (E.D. Tex. Mar. 1, 2016). The ALJ's intent to limit Plaintiff to occasional crouching is apparent from the remaining parts of the decision because the ALJ found Plaintiff's osteoarthritis to be a severe impairment and concluded Plaintiff could perform only representative jobs that required either occasional or no crouching. The case should not be remanded for a scrivener's error. It is inconceivable that a different administrative conclusion would have occurred absent the error. *See Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021)

8

("Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err.") (citing *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003)).

### C. Dr. Sandusky's opinion regarding Plaintiff's mental limitations

Patricia M. Sandusky, Ph.D., a psychologist, examined Plaintiff on December 4, 2017, at the request of Disability Determination Services. [1] at 536-40. Plaintiff alleges "the ALJ is incorrect in his basis for discounting the intellectual limitations opined by Dr. Sandusky." [14] at 12. According to Plaintiff, the ALJ's "only justification [for] discounting Dr. Sandusky's opinion with respect to intellectual limitations is because 'there is no objective medical testing to support her opinion." [14] at 12-13. Plaintiff argues that "[i]t may be true that Dr. Sandusky did not administer full IQ testing, but it is not correct, as the ALJ finds, that Dr. Sandusky relied upon no objective testing in reaching her conclusions as to mental limitations." *Id.* at 13. Plaintiff asserts that Dr. Sandusky performed objective testing by "test[ing] Plaintiff's ability to perform simple calculations, her concentration through a test of digits backwards and forwards, her abstract thinking through proverb interpretation, and her judgment and reasoning through a sampling of WAIS-IV comprehension questions." [18] at 6.

Plaintiff's argument focuses on the following excerpt from Dr. Sandusky's report, which is also quoted in the ALJ's decision:

> From an *intellectual perspective* she would have some difficulty functioning in a work environment in terms of attending and concentrating, interacting with the public, or receiving supervision.

9

[12] at 23 (emphasis in ALJ's decision).

Before quoting this portion of Dr. Sandusky's report and finding it unpersuasive, the ALJ discussed Dr. Sandusky's examination. *Id.* at 22. The ALJ first highlighted that Plaintiff "initially denied use of illicit drugs but when confronted, she admitted to cannabis use with the most recent being last year." *Id.* The ALJ then pointed out Dr. Sandusky's observations that despite Plaintiff's claims of anxiety and auditory hallucinations, Plaintiff exhibited no signs of either at the examination and was prescribed no medication for psychosis. *Id.* The ALJ also considered Dr. Sandusky's "[e]valuation show[ing] remote memory was fair, recent memory was adequate, immediate recall was poor, and concentration and attention was fair." *Id.*

Specific to Dr. Sandusky's diagnosis of mild intellectual disability, the ALJ emphasized that the diagnosis "was not supported by IQ testing." *Id.* at 22. The ALJ compared Dr. Sandusky's diagnosis of mild intellectual disability to Plaintiff's education records and found Plaintiff's claim of illiteracy and an inability to write out a grocery list not credible because Plaintiff was promoted to eighth grade, and her last grade in English appeared to be a C-. [12] at 22. The record does not support Plaintiff's argument that the ALJ discounted Dr. Sandusky's opinion for the sole reason that "there was no objective medical testing to support her opinion."

To the extent Plaintiff argues the ALJ was wrong to state that "there is no objective medical testing to support [Dr. Sandusky's] opinion," Plaintiff offers only her view, and no authority, that the tests she lists should be considered objective testing. The ALJ took into consideration tests Dr. Sandusky performed because the

10

ALJ's opinion summarizes that Dr. Sandusky's "[e]valuation showed remote memory was fair, recent memory was adequate, immediate recall was poor, and concentration and attention was fair." [12] at 22. Further, Plaintiff's allegation regarding objective testing ignores the ALJ's observations throughout the decision regarding Plaintiff's lack of honesty and effort during consultative examinations. The ALJ highlighted Plaintiff's dishonesty to Dr. Sandusky about prior illicit drug use, Dr. Chad Cooley's observation that Plaintiff's exam was difficult due to Plaintiff's poor effort and participation, and Dr. Boggs diagnosis of malingering and note that "the claimant's remote recall was disorganized and over-stated." *Id.* at 21-22. Substantial evidence supports the ALJ's conclusion to reject Dr. Sandusky's diagnosis of mild intellectual disability because the diagnosis was not supported by IQ testing, and it contradicted other evidence in the record.

## RECOMMENDATION

It is recommended that Plaintiff's Motion for Summary Judgment [13] be denied, Defendant's Motion to Affirm the Commissioner's Decision [16] granted, and Plaintiff's appeal dismissed with prejudice.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Local Uniform Civil Rule 72(a)(3),

> After service of a copy of the magistrate judge's report and recommendations, each party has fourteen days to serve and file written objections to the report and recommendations. A party must file objections with the clerk of court and serve them upon the other parties and submit them to the assigned district judge. Within seven days of service of the objection, the opposing party or parties must either serve and file a response or notify the

>district judge that they do not intend to respond to the objection.

L.U.Civ.R. 72(a)(3); *see* 28 U.S.C. § 636(b)(1).

An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. The District Judge need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations within fourteen (14) days of being served a copy shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion adopted by the Court to which he did not object. *Douglass v. United Servs. Auto. Assoc.,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

**SIGNED,** this the 5th day of August, 2021.

*s/ John C. Gargiulo*
JOHN C. GARGIULO
UNITED STATES MAGISTRATE JUDGE